The first case on our docket today, January 19, 2011, is agenda number 10, Genius v. County of Cook et al. Counsel for the appellant? Good morning, Your Honors. My name is Kerry Horvath. I represent the Forest Preserve District of Cook County, the defendant and appellant in this case. May it please the Court, Counsel. This morning I hope to discuss with Your Honor why the decision of the Employee Appeals Board to exercise jurisdiction in this case was reasonable and entitled to judicial deference, why the decision to sustain three of the charges against Mr. Genius was not against the manifest weight of the evidence and was, in fact, amply supported by the evidence in the record, why the decision to discharge while harsh was not arbitrary or capricious and reflected the needs of the Forest Preserve District Police Department, and then how, contrary to plaintiff's argument, he was accorded due process and that, further, he did not diligently act to protect any of his alleged claimed rights. The first issue before the Court is whether the grant of jurisdiction by the Cook County Board of Commissioners was clearly expressed and clearly expressed their intent that the Employee Appeals Board would have jurisdiction to hear and decide this case. And if that grant of jurisdiction was ambiguous, was the Board's interpretation, the Employee Appeals Board's interpretation of its jurisdiction, of its interpretation of the ordinance that it had jurisdiction to act, was that interpretation reasonable and entitled to judicial deference? When a court reviews the interpretation of an agency or board such as the Appeals Board that construes the statute that it administers, the first step the court takes is to look at the language of the statute or ordinance and determine if there has been a clear expression of intent with respect to the matter in issue. If, after examining the ordinance, it's determined that the Board or the legislative body clearly expressed its intent, that's the end of the inquiry and nothing further is done by the court. However, if there is an ambiguity in the expression of intent, the court then asks the next question, was the agency's interpretation of that ambiguity reasonable? And if it is reasonable and permissible, then there should be judicial deference accorded. And with respect to the decision itself or the agency's interpretation. Mr. Horvath, are you relying upon the general provision to invoke jurisdiction? The general provisions of the ordinance? Yes. Yes, I am. With respect to 4450B, I'm relying on the expression that nothing in the article would deprive the Employee Appeals Board of jurisdiction to hear and decide the merits. And that general provision would trump even though you admit that none of the administrative procedures were followed, right? I don't admit the administrative procedures weren't followed here, Your Honor. What we had under the Employee Appeals Board, what you had is a structure that said the department head must issue a decision from which the employee must ask for review. What we had here was because of the confusion created when the lawyer for the board said the board does not have Mr. Navias then processed charges through a referral of what he called the Civil Service Commission. But what he did was he then recommended that there be a termination. Ultimately, this board determined that it could hear this particular case under the jurisdictional grant that was given to it. And what happened in the appellate court below was instead of focusing on whether there was a clear grant of jurisdiction by the county board or if there was an ambiguity, was the board, the Employee Appeals Board's resolution of that ambiguity reasonable? The appellate court focused on what I'll call a procedural limitation to the invocation of the appeals board's jurisdiction. And never conducted the analysis first to determine whether the board itself, the Employee Appeals Board, was granted jurisdiction, a clear grant by the county board, or if that grant was ambiguous in some way. Was the board's resolution, was the board's interpretation of the grant of jurisdiction reasonable? It may not, it does not have to be the best interpretation, nor the one that the court might necessarily adopt. But the court should not impose its own construction without at least going through the analysis. And I believe that's what this court has told us in the Illinois Consolidated case. And that was the framework that was followed, I should say the analytical framework that was followed by the second district appellate court in Quality Saw and the fourth district in the Illinois Bell Telephone case in analyzing a question of whether the agency reasonably interpreted its grant of jurisdiction to hear the particular matter before it. Mr. Horvath? Yes. Are you referring to section 44-50B2 of the Cook County Board Ordinance? Yes, I am. Does it, it states, did the appellate court reason that this, quote, nothing in that portion of the ordinance which creates requirements for proceeding before the employee's appeal board shall deprive the employee appeals board of jurisdiction to decide the merits of a disciplinary action? Did they interpret that? I don't believe they did. I don't believe they asked the first question, does this grant of jurisdiction, does this language grant this board jurisdiction? But if they did ask that question, Your Honor, and they didn't resolve it because they determined that there was an ambiguity, then the next question would have been, was the board's interpretation that it had jurisdiction reasonable? That's the framework that this court has told us that we should follow or that the court should follow in reviewing a decision by the agency as to its interpretation of an ordinance or statute, including an interpretation of the jurisdiction that it believes it has. They say that the failure to, the department hence failure to render a disciplinary decision, does that render it fatal to the employee appeals board jurisdiction? Failure to render a disciplinary, does that make it fatal? Does that, no, Your Honor, the fact that the department did not say to the individual, you're discharged, that doesn't eliminate the jurisdiction because I believe the board ultimately makes the decision on, the employee appeals board ultimately makes the decision on whether to discharge or not, whether to discharge or not, whether to discharge or not, whether to discharge or not, whether to discharge. And I believe that's what the county board was trying to say when they said nothing in this article will deprive the board of its jurisdiction to hear and decide, or to decide the merits of a disciplinary action. So if we were to affirm the appellate court and or, would disciplinary action proceedings against the plaintiff begin again? In all likelihood, yes, Your Honor, but I'm not, I would assume they would, yes, because the board's decision to ultimately sustain what was in front of it was based upon what was rather compelling and convincing evidence of misconduct. I believe, though, that if this court were to affirm and send it back, I mean, we had a situation where all of the parties were before the court. All of the parties were before the agency. This was the type of case that this agency was created to hear. There was no other agency or board that would hear this kind of case. And it's implicit, I believe in their footnote to their very, on the very first page of their decision that they understood. This was their case now to decide. I can't excuse the confusion that was created by the board's attorney, but this board was created to hear. This board reasonably acted and reasonably interpreted the ordinance itself as a grant of jurisdiction. And if there was a limitation created by the procedure that occurred, as long as the, when the board, I don't think it ignored procedure here. I don't think it did that at all. But it's certainly that whatever procedure was not strictly adhered to, that had no effect on the impartiality of the proceedings. It had no negative effect on the plaintiff in this case. And there was no prejudice to the plaintiff because, and there's been no argument that the hearing itself was conducted in anything other than a fair and impartial manner. I think the closest thing I can relate to that is the Schenkel case, which we've cited in our brief, where the appellate court indicated that the plaintiff was not responsible for any of the proceedings. And they indicated that if a commission itself doesn't necessarily follow all of its procedures, that's not reversible error. But that's a procedural issue. And I think here, the first district, what they did was they took the procedural limitation and used it, construed it in their own way without going through the analysis that this court has told it it should do. And without questioning if there was a ambiguity, was there a reasonable interpretation of that ambiguity. And it took the procedural issue and, in effect, divested the board of its jurisdiction. The board hears, does the board conduct a de novo? Yes, they hear the evidence presented as though it were a civil case. Plaintiff, defendant. In this case, the employer, the Forest Preserve District, goes first and puts on its case in support of its charges. It didn't require the employee to appeal, but I believe that even if there was an appeal, it would be treated quite like an appeal or an arbitration in an employee setting where the employer still has the obligation to go forward and prove the basis for a suspension or discharge. How do we know, counsel, that the board actually relied on the ordinance? I think, Your Honor, two ways. One, by actually asserting their authority to act, by actually taking the case and acting on it. That's one way of asserting their jurisdiction. The second way, I believe, as I said, there's a footnote in their very first page of their decision where they say that the service commission has been abolished and that the matters are being transferred for disposition to them. And I think it's implicit in that remark that they determined they had jurisdiction to hear this particular case or cases like this. It's not possible, then, that the board mistakenly believed it had jurisdiction under the transfer ordinance? I don't believe that's at all possible. They were the only board that could hear this type of case. They had the ordinance, they were given the geographic jurisdiction. There was no mistake there. Mr. Horvath, what do we, and I asked you earlier about the general provision, what do we do with the rule of statutory construction that talks about specific versus general? And the fact that the code contains specific provisions contemplating the situation that's presented here? When you say specific provisions, are you referencing the fact of the decision to be reviewed? Is that what you're referring to? As I see it, the grant of jurisdiction, the general grant of jurisdiction in 4450B2 says nothing shall deprive the board of jurisdiction. And in terms of other specific provisions for jurisdiction, I believe they had jurisdiction to hear any type of So you're looking at, even if procedures aren't followed, you're saying that catch-all clause would cover that? Not all procedures, Your Honor. Procedures, if the board acted with impartiality or failed to act with impartiality, or if the board ignored claimed rights and resulted in a deprivation of someone's constitutional rights, that's not permissible at all. But I think with respect to certain procedures, the failure to follow certain procedures doesn't divest the board of its jurisdiction because it has the parties in front of them, it's the type of case it's been created to hear and decide, and it has the authority for the ordinance to do that. And so, at least with respect to a technical matter like this, 4450B2, that last sentence, I believe eliminates the potential, or eliminates, creates a jurisdictional basis for the board to act, even if the board believes a procedure may not have been strictly followed. And the appellate court looked at the procedure, looked at the limitation, and said, no, you have no jurisdiction whatsoever, and I believe that was in contrary to what this court has instructed, as I said earlier, and also in conflict with the second and fourth appellate districts in the Quality Saw case and in the Illinois Bell Telephone case, which creates a problem which I believe... I'm not sure if there's a difference between procedures that would have to be followed to invoke jurisdiction. I mean, you mentioned impartiality, for example. I think technical procedures would not thwart jurisdiction, but more substantive. In a setting like this, if there has been a disciplinary action taken or recommended, a board like this certainly has authority to hear what is brought before it. If a board grant, if it has procedures for presentation of the ordinance, if it has presentation of the case by the employer, presentation of the case by the employee, and rules of evidence, those must be followed, Your Honor. I'm not saying that they can just ignore that. But something such as this, where instead of saying, okay, this was a recommendation from the department head, termination. We need a decision from the department head termination before this board can act. That wouldn't necessarily... Your point isn't that you wouldn't have jurisdiction. Your point is there would still be jurisdiction, but the decision could be thrown out as a result of not following the procedure? I think if the decision, if there was a flaw in the decision warranting reversal, yes. But a situation like this, where you have what I consider to be a technical portion of the procedure, resulting in... I want to ask a question about the merits. Your PLA only addresses jurisdiction. The appellate court never addressed the merits of the EAB's decision, right? That is correct. Even if we agree with your argument, do you have any problem with us just sending it back to the appellate court on the decision itself? Your Honor, we, in general terms, we asked for this court to consider the merits as well at the very end of our PLA. This matter has been litigated for a full number of years. It has been fully litigated. I think in the interest of judicial economy and in fairness to the parties and to the courts, that it would be appropriate for this body to determine the merits. And with respect to the merits, just briefly, I would indicate that in our briefs and in the decision of the Employee Appeals Board, the factual basis for the support of the charges against Mr. Greene is compelling, particularly with respect to the use of the fake authorization over a period of years to further his own personal interests. Mr. Gene has admitted using it, admitted involving people in his deception, the O'Heron Company in Danville, telling them to destroy this document. It's destroying evidence. He's a policeman. Tell him you got it from the district, if anyone asks. That's in his note to Mrs. Okerlund. On the charge of improper sexual conduct, the board had to determine the credibility of Mr. Wilson and Mr. Gene. The board determined that Mr. Wilson was credible and that this conduct was not trivial and that he misused and disrespected his badge and the property he was employed to protect. Thank you very much, Your Honor. Thank you, Counsel. Good morning, Your Honors. My name is Erica Thomas and I'm here today representing Sgt. Jack Genius. May it please the Court and Counsel. The rights and protection to which Sgt. Genius was entitled were repeatedly violated by the Cook County Forest Preserve District and the Cook County Employee Appeals Board. Procedural due process in an administrative proceeding involving the discharge of a public employee requires that the employee be given notice of the charges against him, an explanation of the employer's evidence, and an opportunity to be heard. The Loudermill case stated that although the due process clause does not require a specific time frame in which to provide a hearing, it requires a hearing at a meaningful time. Sgt. Genius endured almost five years of unpaid suspension. Before he was given notice of charges against him or the opportunity to be heard. During this five-year limbo, Cook County adopted a human resources ordinance that abolished all of Sgt. Genius' civil service rights and made the issue of administrative jurisdiction extremely complicated, such that when Sgt. Genius was finally given an opportunity to respond, it was unclear under what procedure the action would be proceeding. However, it cannot and should not be forgotten that the jurisdictional issues in this case were complicated only by the district's failure to act in a timely manner. The First District Appellate Court's holding that the Employee Appeals Board lacked jurisdiction to hear and issue a decision on Sgt. Genius' case was a proper ruling and should be upheld by this Court. Counsel, what does it mean, though, then, in 45-50B2, when the ordinance says specifically that nothing in the ordinance shall deprive the Employee Appeals Board of jurisdiction to decide the merits of the disciplinary action? It says nothing, even if it was a delay. Understanding that it does not address the delay, there is a particular word in there that's very key and that this Court cannot forget. That word is the disciplinary action. There was no disciplinary action initiated by the Forest Preserve District in this case. The action is that the department head takes some type of action himself. He either discharges, suspends, whatever he plans on doing. It is the employee, then, who can appeal to the board. Now, essentially, that's a two-level process. So there is the proceeding that the employer allows, the district in this case. Which was a suspension in this case? Which should have been written charges, an opportunity for Sgt. Genius to respond, and ultimately a disciplinary decision. Did he respond in any way or ask for an appeal of the suspension? Sgt. Genius did not have any mechanism to respond or to appeal his charges. Keep in mind, the first four years of this action, we acknowledge, were covered by the civil service rules. And under those civil service rules, it's very specific that written charges must be filed. That is what starts the whole ball rolling. There were no written charges for Sgt. Genius to appeal or to have a hearing on or anything that would have enacted his rights. Sgt. Genius, however, did not just sit by. He sent a letter. He got notice of his suspension. And keep in mind, the suspension was based on his, on the fact that criminal charges had been filed. He immediately sent a letter to the chief of police saying, I demand my due process rights. Let me know when there's going to be a civil service hearing. Let me know what's going on. And not only did he send it to the chief of police, he copied that letter to the head of the civil service commission. Now, of course, the commission had no jurisdiction because, again, the district had not filed any charges at that point. So Sgt. Genius, his hands were tied. There was nothing that he could do under any of the due process rights that were available to him until the district acted. As I indicated, there's no question that during the first four years of Sgt. Genius's suspension, he fell under the jurisdiction of the Cook County Civil Service Commission. Although Sgt. Genius does, in fact, take issue with the district's authority to suspend him, the district did not file charges against him for over 30 days without written charges. At any time during that four-year period, the district could have filed written charges against Sgt. Genius as provided by Sections 1 and 2 of Rule 9 of the commission rules. However, rather than follow the clear procedures provided for in the commission rules, the district chose to take a wait and see approach. Sgt. Genius never requested that the district delay filing charges against him until he had resolved the criminal case that caused his death, and did not, in fact, allow him to do so if that had been the case. It was the district's own decision to delay initiating disciplinary proceedings, and it was done at its own peril. Its delay caused the confusion in this matter. At no time from the date of Sgt. Genius's suspension in June 1996 until the Human Resources Ordinance was passed in April 2000, did the district comply with the due process procedures outlined in the commission rules or initiate proceedings under these rules. Even though the district's delay put Sgt. Genius's case outside the jurisdiction of the Civil Service Commission, both Sgt. Genius and the Employee Appeals Board were incorrectly advised by the board's attorney, Robert Furniss, that the case should proceed under the Civil Service rules. There was no legal basis for this direction. Other than Attorney Furniss's letter to Sgt. Genius, the only statement of jurisdictional import by the board is in a footnote to its written decision, which was previously referred to by the board's attorney, Robert Furniss, in a letter to the board's counsel that stated, the Civil Service Commission has been abolished by county ordinance. All matters pending before the Civil Service Commission were transferred and assigned to this board for decision. The board was citing, almost verbatim, the Cook County Municipal Code, section 44-48C. Although the board's jurisdictional recitation would have been accurate had the charges against Sgt. Genius been pending when the ordinance was enacted in April 2000, the fact that the board had no charges pending against Sgt. Genius at that time, with no civil service charges pending when the ordinance was enacted, the board could not properly exercise jurisdiction over civil service proceedings against Sgt. Genius under this exception. Although not referenced by the board, there was still another way for the board to obtain jurisdiction over a civil service proceeding against Sgt. Genius after the Human Resources Ordinance was enacted. The ordinance provided for a 60-day grace period, and the board was instructed to initiate disciplinary actions under the civil service rules where the charges on which the action was based took place prior to the effective date of the ordinance. This grace period was clearly applicable to Sgt. Genius's situation. However, the district did not make use of this opportunity either. It was not until May 2001 that the district chose to take any action against Sgt. Genius well after this grace period had expired. Accordingly, there was no legal way for the board to exercise jurisdiction over civil service proceedings against Sgt. Genius. Since the Employee Appeals Board did not have jurisdiction over any civil service proceedings against Sgt. Genius, the question next turns to whether the Employee Appeals Board had jurisdiction over disciplinary proceedings against Sgt. Genius under the Human Resources Ordinance. Arguably, if you take the unreasonable delay and the improper suspension out of the equation, had the district properly complied with the disciplinary procedures provided in the Cook County Municipal Code, the Employee Appeals Board could have exercised jurisdiction over Sgt. Genius's case. But the fact remains that the district did not properly comply with those procedures, and the district's error deprived the Employee Appeals Board of jurisdiction. The district admits that Sgt. Superintendent Nevious never failed to issue a disciplinary decision to Sgt. Genius as required by Section 44 of the Human Resources Ordinance, Section 44-50B1 of the Code. They admit this in their brief. Without such a decision, Sgt. Genius could not file an appeal with the board, and the board could not properly invoke its jurisdiction over this matter. This admission in and of itself validates the First District Appellate Court's ruling. The district argues that a sentence, the final sentence in Section 44-50B2 of the Cook County Municipal Code, that was not cited or referred to by the board in any of Sgt. Genius's proceedings, in its written decision, or in any way, shape, or form, granted the board necessary jurisdiction over Sgt. Genius's discharge hearing. The absence of any reference to this sentence by the board indicates that the board did not consider this sentence or this section. Even had the board... ...considered this sentence, there was no disciplinary action for the board to take. The board did not consider this sentence or this section to be necessary for the board to exercise jurisdiction over, because again, the district had failed to properly take disciplinary action against Sgt. Genius under the procedures provided for in the Human Resources Ordinance. It's important for the court to remember that agencies can only act under the specific authority provided by codes and statutes. And in this case, although there was opportunity and there was a way to exercise jurisdiction, in no way, shape, or form was it that the Employee Appeals Board properly exercised jurisdiction here. Now, the district argues that Sgt. Genius was not prejudiced by the board's improper exercise of jurisdiction, and therefore, the proceedings should stand and be upheld by this court. What the district fails to appreciate is that Sgt. Genius was, in fact, significantly prejudiced by going through the entire administrative leg of these proceedings under a misapprehension of what rules were being applied. The board did not consider Sgt. Genius's discharge hearing. Initially, fundamental fairness requires that Sgt. Genius had the right to be informed under what authority the board was conducting his hearing before it commenced, not after the board rendered its decision. All of Sgt. Genius's latches and due process arguments to the board were founded on the Civil Service Commission rules, because that is what the board informed him it was operating under. Accordingly, each and every ruling that the board made on these very important issues in Sgt. Genius's case was based on an incorrect review of the applicable rules, policies, and codes. Sgt. Genius never raised any due process arguments about the timeliness or appropriateness of the hearing before the board, as provided by Section 4450B of the code, although there were certainly arguments to be made, because he was told by the board that the Human Resources Ordinance did not apply to his case. Ms. Thomas, just as a question on facts, that there was a criminal proceeding in Vermilion County, correct? That is correct. And actually resulted in a mistrial, and so that suspension was pending the outcome of the criminal matter. That is correct. And Mr. Genius knew that? Mr. Genius was notified by letter when he was initially suspended, that the suspension was due to the fact of the criminal proceedings pending in Vermilion County. That is correct. And then there was a second trial, because the first one resulted in the mistrial, and then they decided to dismiss the charges, but that was the second trial. Now, in May of 2001, didn't he demand his reinstatement then after the criminal matters? And then on May 25th, that same month, that same year, that the board told him that they were going to give him notice that they intended to terminate him? So everybody was kind of waiting until the criminal matter was over? Everybody was not. Sgt. Genius was not. Sgt. Genius asked that he be provided his due process rights immediately. After he was suspended, he sent the letter to the commission and to his chief. Every time he saw a chief, his chief, Chief Kastens in this case, at the criminal proceedings down in Vermilion County, he approached the chief and said, am I going to be suspended? Am I going to be reinstated when I'm done? The chief said yes, and the chief testified during the administrative hearing that Sgt. Genius was very adamant about having these proceedings go. So Sgt. Genius did not want to... Although, I think a letter in June of 96, the district sent him a letter informing him he was suspended without pay pending the resolution of the criminal matter. So he immediately knew that they were going to wait until the end of the criminal matter. But under what authority did they wait, Your Honor? That's the issue here. The civil service rules provided that written charges needed to be filed. The district could have filed the charges and then waited, or they could have filed the charges and forced Sgt. Genius to ask that the proceedings be delayed. But none of that happened. Sgt. Genius, he called the superintendent, the superintendent refused to take his calls. I mean, he did everything he possibly could, and at every avenue he was told, you know what, just hold on, wait. As soon as this criminal case is over, we'll put you back to work if you're vindicated. So Sgt. Genius, as anyone would, relied on his employer's word that that is what would happen. But that's not what happened. What happened was that when the criminal charges were over, he waited for a couple of months, there was no action on the district's part, and then he sent a letter. He took it upon himself to send a letter saying, I want to go back to work. He told me I could. It's then, only then, that the district filed written charges against him, and it was then, only then, that Sgt. Genius was faced with all kinds of charges, a whole slew of different charges that the criminal case were not based upon. Charges that had occurred at that point approximately almost 11 years previously. He had no idea what had happened, or that those charges might potentially be lodged against him. Had he had an idea, he probably would have taken some action. He probably would have gotten some witness statements, he would have talked to people, he might have gathered some evidence. But 11 years later, it was a long time to be slapped in the face with something you didn't know was coming. There may be some reluctance on this Court's part to find that the Board did not have jurisdiction over Sgt. Genius's case because of the possible effect that such ruling might have on other Cook County employee cases. It's been almost 11 years since the Human Resources Ordinance was enacted in Cook County. It is difficult to imagine that any other cases would have facts similar to Sgt. Genius's case, would present similar jurisdictional issues, or would still be pending at this point. Any such finding by this Court will arguably not open the floodgates for litigation about the Board's jurisdiction. And if there are other cases, they will be few and far between. As previously noted, both the District and Sgt. Genius fell under the purview of the rules of the Civil Service Commission for the first four years of his suspension. These rules were enacted to protect the rights of the employees. It's uncontroverted that Sgt. Genius was suspended without pay, without written charges, from June 17, 1996 until May 25, 2001, when he was finally served with notice. There is no authority for the District to have suspended him without written charges during this period of time. Regardless, if this Court decides to look at the merits of the case, even if the Court upholds the decision, the Court needs to look at the fact that there was no authority for this unlawful suspension. And because there was no unlawful, because there was no lawful authority for this suspension, Sgt. Genius is in fact entitled to back pay during this period of unlawful suspension, at least until charges were ultimately filed. However, rather than focusing or even acknowledging the clear lack of authority for the District's action, the Board placed the blame on Sgt. Genius. The Board stated in its decision that Sgt. Genius' letter demanding due process was insufficient and he should have filed a mandamus action. There is, again, no authority that requires an employee to try and have disciplinary charges filed against himself. Was it incumbent upon Sgt. Genius to spend his own money on legal fees, to hire a lawyer to compel the District to do what it should have been doing in following the rules? And those rules were discretionary, although the Board determined that a mandamus action could have been filed, whether or not the District was going to file such charges was totally discretionary. So a mandamus action would have done Sgt. Genius no good. The bottom line is the District has never argued and has never cited to any court that it had authority to do anything that it did here. And that is really the bottom line. Ultimately, the Employee Appeals Board did not have jurisdiction to do anything it did. Sgt. Genius was wrongfully deprived of his rights, of his due process, and of anything else that he was entitled to as an employee. And here we are, almost 15 years later, and we're still discussing the horrible deprivation of rights that Sgt. Genius has suffered here. I'd ask the Court to affirm the 1st District Appellate Court's ruling. Thank you very much. Thank you, Ms. Thomas. Mr. Horvath? Briefly, in rebuttal, Your Honors, I believe counsel is in favor of this ruling. I now have some mixed up apples and oranges. With respect to the initial suspension in 1996, which was not an issue raised in the Appellate Court decision which is here today for review, but with respect to that suspension, there was, before the suspension was put into place, there was an indictment. And prior to that indictment, as early as March 5th of 1996, and these documents are in the record. I believe they start at 913. Mr. Genius was given an investigative charge. He was given an opportunity to cooperate. He was given an opportunity to explain his version of events. He refused, he refused, and he refused. He was given an opportunity to come in with his counsel and tell the supervisors his version of events. He refused. After the indictment, there was no need to conduct any other type of hearing. The United States Supreme Court has told us in Gilbert v. Homar that when you have an indictment, basically you have an independent third body that's reviewed the basis for the suspension or the... Pardon me, Your Honor? He was told he was being investigated for violation of rules that pertain to the Forest Preserve District. He was given, he refused on an administrative level and then on a criminal, on the basis of his Fifth Amendment rights, yes. But if I may get back, did I answer your question? If I may get back, under Gilbert v. Homar, when the grand jury came down with its indictment and made a finding of probable cause, it found that that eliminates the need for another hearing to determine if there's a valid basis for the suspension. And the suspension was in effect for over four years, and during that whole four-year period of time, or four and a half years, or four and a half year period of time, Mr. Genius didn't do anything. He wrote one letter. He did nothing else. And this Court has told us in Ray Tequila and also in the Tully case, which we cited in our briefs, that if you do not timely proceed to protect what you consider to be your fundamental rights, you can forfeit them. Or, you could lose them by virtue of your latches, which was the essence of the decision in Tully. Mr. Genius didn't do it. The conversations he was supposed to have had with his supervisor, are they of record? Yes, Your Honor. They start in the record. If I'm not mistaken, they start in the record. There were documentation and it started at C-913. This was in addition. These conversations of record were in addition to the letter. There were no conversations conducted. The documents were marked refused by the supervisors. I thought counsel, his attorneys argued, or has told us, that he approached his supervisor each time he went to court and said, I want to be reinstated. There's nothing in the record that says, we'll put you back to work, Your Honor. He had a conversation at one point with the chief of police, Chief Kastens, and Kastens told him that ultimately, the essence of the conversation was, the ultimate decision was going to be the superintendent's. He didn't say put him back to work. There's nothing in the record to that effect, Your Honor. No supervisor ever told Mr. Genius, you're going back to work. That wasn't in the record, and I think the essence of the conversation was, from the chief to the superintendent, to Mr. Genius, the ultimate decision on your discipline. Finally, during the period of time that Mr. Genius was suspended, he was employed. He took employment, I believe at one point in the record it indicates that he took employment in a police agency for the village of Dixmoor. And he did nothing, and what the board said in this case is, because you didn't actively attempt to have your suspension removed, or to further any claim for back pay, that they were going to decline it. That decision was not against the manifest way of the evidence, nor was it clearly erroneous in this case, because Mr. Genius didn't do anything. And he had the availability, if he really felt he should be reinstated, he could have asked for a hearing, or he could have filed a mandamus. And in the appellate case of Jaworski v. Jenkins, that type of relief was awarded to the officer involved in that case. The trial court fashioned relief, and the relief the trial court fashioned was approved by the appellate court. I don't believe I have anything else at this point to rebut. I thank your honors, and we would ask that this court reverse the decision of the appellate court, determining that the employee appeals board did not have jurisdiction, and reinstate the decision of the employee appeals board, sustaining the three charges against Mr. Genius, and discharging him as a police officer for the Forest Preserve District of Cook County. Thank you, Mr. Horvath.